UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

    Plaintiff,

    v.        Case No.

APPROXIMATELY $82,020.00 IN UNITED STATES CURRENCY,

    Defendant.

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Elizabeth M. Monfils, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1. This is a civil action to forfeit property to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

### The Defendant In Rem

2. The defendant property, approximately $82,020.00 in United States currency, was seized on or about May 25, 2022, from an individual having the initials K.C. at 8626 N. Granville Road, #C031, Milwaukee, Wisconsin.

3. The defendant property is presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

**Basis for Forfeiture**

7. The defendant property, approximately $82,020.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

**Facts**

8. Heroin is a Schedule I controlled substance under 21 U.S.C. § 812.

9. Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812.

10. Suboxone (buprenorphine) is a Schedule III controlled substance under 21 C.F.R. § 1308.

11. Alprazolam is a Schedule IV controlled substance under 21 C.F.R. § 1308.

12. On or about February 12, 2008, K.C. was found guilty at jury trial of a felony count of possession of cocaine with intent to deliver in Milwaukee County Case No. 07CF4095.

13. Since on or about February 12, 2008, K.C. has been, and remains, a convicted felon.

14. As a convicted felon, K.C. is prohibited from possessing a firearm.

**Investigation into drug trafficking activities of K.C.**

15. In November 2021, a confidential informant ("CI") stated that the CI had delivered kilogram quantities of controlled substances to, and made money pickups of drug proceeds from, K.C. about ten (10) to twenty (20) times during 2021.

16. The CI stated that the deliveries of controlled substances to, and money pickups of drug proceeds from, K.C. took place inside a residence located at 9XXX N. 95th Street, Apt. X, Milwaukee, Wisconsin (the "95th Street residence").[1]

17. The CI further stated that during some of the deliveries of controlled substances to, and money pickups of drug proceeds from, K.C. at the 95th Street residence, K.C.'s girlfriend, Derricka Love, was present, along with a young child.

18. K.C.'s probation officer confirmed that K.C. and Derricka Love were living together at the 95th Street residence, along with their young child.

19. During surveillance at the 95th Street residence, officers saw activity consistent with individuals conducting drug transactions from the residence.

    A. Individuals walked to the rear door or the front door of the 95th Street residence.

    B. The individuals would be at the door, or step inside the door, for a minute or two and then leave the location.

    C. Based on their training and experience, officers believe that these short interactions are consistent with drug transactions.

    D. Officers also noted that individuals had walked to the rear door when K.C.'s Honda Odyssey was not parked at the 95th Street residence but when Derricka Love's Mercedes Benz was parked at the residence.

    E. Based on their investigation, officers believe that Derricka Love assisted with some of the deliveries of controlled substances to, and/or money pickups of drug proceeds from, K.C.

---

[1] Throughout this complaint, certain information has been redacted using the letter "X" as a means of avoiding the revelation of any personal information.

20. During surveillance at the 95th Street residence, an officer saw K.C. leave the residence in his Honda Odyssey and drive to a U-Haul Storage facility located at 8626 N. Granville Road, Milwaukee, Wisconsin, and drive into the grounds through the security gate.

**May 24, 2022 arrest of K.C. and execution of search warrant at the 95th Street residence**

21. On May 24, 2022, officers arrested K.C. during a traffic stop after K.C. had exited the 95th Street residence and driven away.[2]

22. K.C.'s arrest was due to a Wisconsin Department of Corrections' warrant for violation of the terms of his extended supervision in a 2011 Milwaukee County Circuit Court case in which K.C. pleaded guilty to possession of cocaine with intent to deliver.

23. K.C. had two cell phones on his person at the time of his arrest.

24. On May 24, 2022, following K.C.'s arrest, officers conducted a Wisconsin Act 79 search of the 95th Street residence.

25. Derricka Love was the only person present at the 95th Street residence during the search.

26. While clearing the 95th Street residence, officers saw the following in plain view:

    A. On a bedroom dresser were seven bags containing suspected heroin and crack cocaine, an open box of baggies, and a digital scale with white residue.

    B. In the bedroom closet was a gun box.

27. Derricka Love was arrested. She had one cell phone on her person.

28. Officers then obtained and executed a search warrant at the 95th Street residence.

29. On May 24, 2022, the following items, among other things, were located in the 95th Street residence:

---

[2] K.C.'s vehicle had excessive tint applied to the windows.

4

Case 2:24-cv-01278-LA   Filed 10/08/24   Page 4 of 11   Document 1

A. In the master bedroom:

  i. Three baggies containing a total of approximately 63.02 grams of heroin located on top of the dresser.

  ii. Four baggies containing a total of approximately 55.37 grams of cocaine located on top of the dresser.

  iii. An unlabeled prescription bottle containing approximately 94 Alprazolam tablets located on top of the dresser.

  iv. A baggie containing approximately 63 suboxone film packages located on top of the dresser.

  v. A digital scale with residue located on top of the dresser.

  vi. An open box of baggies located on top of the dresser.

  vii. Two cell phones located on top of the dresser.

  viii. A revolver loaded with five rounds of ammunition located in the closet.[3]

  ix. A semi-automatic handgun loaded with ten rounds of ammunition located in the closet.

  x. An additional 15 rounds of ammunition located in the closet.

  xi. Numerous pieces of mail for both K.C. and Derricka Love located on the dresser.

  xii. Both male and female clothing located in the bedroom.

B. In the second bedroom:

  i. Two hydraulic "kilo" presses. Based on their training and experience, officers know that drug dealers commonly use these types of presses to package large amounts of cocaine and heroin.

    a. One of the hydraulic presses was imprinted with "Big Bastard" and manufactured by High Tech Presses.

    b. The other hydraulic press was imprinted with "The Brick" and also manufactured by High Tech Presses.

---

[3] This revolver had been reported as stolen in Chicago on November 14, 2018.

ii. A one-pound scale and a large metal tray, both covered with white residue.

iii. Smaller metal blocks/presses used to form smaller amounts of substances, which also were covered in white residue.

30. Officers were in plain clothes during execution of the search warrant at the 95th Street residence when three individuals came to the residence attempting to contact K.C. Based on their investigation, officers believe those three individuals were attempting to purchase controlled substances from K.C.

**May 25, 2022 Mirandized recorded interview of Derricka Love**

31. On May 25, 2022, officers conducted an interview of Derricka Love.

32. The interview was audio and video recorded.

33. Prior to conducting the interview, an officer read Derricka Love her Constitutional Miranda Rights. Love stated that she understood each of her rights and was willing to speak with the officers.

34. During the interview, Derricka Love stated, among other things, the following:

   A. She admitted that K.C. was selling heroin and cocaine.

   B. She had seen controlled substances lying out in their bedroom.

   C. She had seen the hydraulic presses in the house and stated that their young child said that daddy was making bricks for the other house[4], referring to K.C. using the hydraulic presses.

   D. She owned only the semi-automatic handgun and had no knowledge of the revolver located in their residence.

**May 25, 2022 Mirandized recorded interview of K.C.**

35. On May 25, 2022, officers conducted an interview of K.C.

36. The interview was audio and video recorded.

---

[4] K.C. was renovating another residence that he owned.

37. Prior to conducting the interview, an officer read K.C. his Constitutional Miranda Rights. K.C. stated that he understood each of his rights and was willing to speak with the officers.

38. During the interview, K.C. stated, among other things, the following:

    A. K.C. admitted the drugs found at the residence belonged to him.

    B. K.C. admitted that he had purchased kilograms of heroin, at least eight kilograms of heroin since the summer of 2021.

    C. K.C.'s his first kilogram of heroin was fronted.[5] Thereafter, K.C. paid $55,000 per kilogram for heroin.

    D. K.C. would break down one kilogram of heroin and add cut to produce three full kilograms of heroin.[6]

    E. K.C. made about $100,000 in profit from each kilogram of heroin that he purchased.

    F. K.C. last purchased one kilogram of heroin around the end of April 2022.

    G. K.C. still had one kilogram of heroin that he had not yet sold. That heroin was at an unidentified residence in Milwaukee.

    H. When officers noted to K.C. that he would have a large quantity of drug proceeds somewhere and that he would need money to make a future payment for the last purchased kilogram of heroin, K.C. admitted that he owed his drug source $50,000 and that he (K.C.) had about $70,000 in drug proceeds in storage unit 031 at 8626 N. Granville Road in Milwaukee (the "storage unit").

    I. The storage unit was rented in the name of Derricka Love's mother, M.B. M.B. did not have anything in the storage unit.

    J. K.C. kept the key to the lock on the storage unit on his key ring with some of his other keys, which set of keys were at the 95th Street residence.

---

[5] When a drug dealer "fronts" drugs to an individual, the dealer gives drugs to that individual and, in turn, expects that individual to sell the drugs and pay back the dealer from the sales proceeds.

[6] Drug dealers will "cut" or dilute controlled substances to stretch the amount of product and increase their profits.

7

**Search warrant at U-Haul Storage, 8626 N. Granville Road, #C031, Milwaukee, Wisconsin**

39. On March 1, 2024, officers executed a search warrant on U-Haul storage unit #C031 located at 8626 N. Granville Road, Milwaukee, Wisconsin.

40. U-Haul Storage records showed M.D. as the renter of #C031. Based on their training and experience, officers know that drug dealers often put assets and rentals in other individuals' names to avoid detection by law enforcement.

41. Inside the storage unit were, among other things, a black bag and a box containing a total of approximately $82,020.00 in United States currency.

   A. The label on the box showed that the box was sent to K.C. at the 95th Street residence.

   B. The approximately $82,020.00 was separated into $1,000 bundles wrapped with small black rubber bands. These same type of rubber bands were on the master bedroom dresser at the 95th Street residence.

42. A drug detection canine gave a positive alert to the odor of a controlled substance on the approximately $82,020.00 in United States currency.

**Administrative Forfeiture Proceedings**

43. The Drug Enforcement Administration ("DEA") began administrative forfeiture proceedings against the approximately $82,020.00 in United States currency on the ground that the seized currency was used or intended to be used in exchange for controlled substances or was proceeds of trafficking in controlled substances.

44. On or about July 12, 2024, Derricka Love filed a claim with the DEA in the administrative forfeiture proceedings to the defendant approximately $82,020.00 in United States currency.

### Warrant for Arrest In Rem

45. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

### Claims for Relief

46. The plaintiff alleges and incorporates by reference the paragraphs above.

47. By the foregoing and other acts, the defendant property, approximately $82,020.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

48. The defendant approximately $82,020.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 8th day of October, 2024.

Respectfully submitted,

GREGORY J. HAANSTAD
United States Attorney

By: *s/Elizabeth M. Monfils*
ELIZABETH M. MONFILS
Assistant United States Attorney
Wisconsin Bar No. 1061622

Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI  53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: elizabeth.monfils@usdoj.gov

## Verification

I, Jason Baranek, hereby verify and declare under penalty of perjury that I am a Detective with the Oak Creek Police Department (OCPD) in Oak Creek, Wisconsin, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 42 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Detective with the OCPD.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date:  10/08/2024

*s/Det. Jason Baranek*
Jason Baranek
Detective
Oak Creek Police Department